Vreeland v. O'Neil.

---

GARRET S. VREELAND

v.

MARY O'NEIL et al.

The charter of Jersey City (it went into operation in 1871) provides that water-rents for water supplied to the owner or tenant of any lot shall be a lien paramount to any alienation or encumbrance thereof. The complainant's mortgage was given in 1872.—*Held*, that he took his mortgage subject to liability to lien, under the charter, for water-rents, for water supplied to the mortgaged premises subsequently, and that they consequently were a lien prior to the mortgage.

Bill to foreclose. On final hearing on bill and answer.

*Mr. C. H. Hartshorne,* for complainant.

*Mr. A. L. McDermott,* for Jersey City.

THE CHANCELLOR.

This suit is brought to foreclose a mortgage for $1,600 and interest, given on or about February 16th, 1872, by James O'Neil and wife to the complainant, on land in Jersey City. The bill states that the mayor and aldermen of Jersey City, within the territorial jurisdiction of which municipality the mortgaged premises are, have supplied water on the premises from the water-pipes used by that corporation in the distribution of the Passaic water through the city, which water so supplied was used on those premises by the owners or tenants thereof continuously during the year 1874, and every subsequent year since then; that the corporation, acting through its board of public works, has attempted to assess upon the premises certain impositions or taxes, called water-rents, for the use of that water as before stated, which supposed assessments or impositions were made at or about the dates and for the sums respectively mentioned in the bill; and that the corporation claims that those assessments are liens on the property by virtue of the provisions of its charter; but that the complainant charges and insists that his mortgage was delivered and recorded before any of those assessments were made, and that neither the charter nor any other law gives the power to levy those water-rents on the property in such way as to make them a lien prior to that of the complainant's mortgage, and that if it does, the grant of power is so far unconstitutional and void. The answer admits the making of the assessments, and claims that they are, under the provisions of the charter, liens prior to the mortgage.

The charter was approved March 31st, 1871, and went into operation immediately. *P. L. of 1871 p. 1094.* It was, therefore, in force when the complainant took his mortgage, which was not until February, 1872. It provides (§ 81) that the board of public works shall regulate the distribution and use of the water in all places, and for all purposes where it may be

Vreeland *v.* O'Neil.

required, and shall, from time to time, fix the prices for the use thereof, and the times of payment; and that the owner and occupier of any house, lot or tenement where water shall be taken, shall each be liable for the payment of the price so fixed. It also directs that the board shall fix a sum to be assessed annually on all vacant lots, and lots with buildings on them in which the water is not used, if they are situated on roads, streets, avenues, alleys or courts through or in which the pipes for distributing the water are laid ; and that the prices (for the use of the water) and the sums (assessed on property where the water is not used) shall be denominated water-rents. It provides that the water-rents shall, until paid, be liens on the property charged therewith ; and for the collection thereof, directs the board of finance and taxation to cause the lands to be sold to raise the water-rents and penalties, and the interest thereon, and costs, charges and expenses of advertising and sale, in the same manner as the board may be authorized by law to sell lands in the city for the payment of taxes thereon ; and provides that the proceedings and the effect thereof, shall be the same in all things as if the lands were sold for taxes. It provides also (§ 84) that if the occupier of any tenement or lot on which water-rent may become due while in his occupation, shall refuse or neglect to pay it when due, the owner may pay it, and when, as between them, the occupant ought to pay it, recover it of him, with the penalties and interest, by action or distress. The provision of the charter (§ 151) for the collection of unpaid taxes and assessments by sale of the property, declares that they shall be and remain a lien on the land, tenements or real estate on which they are assessed or made, from the time of the confirmation thereof until paid, notwithstanding any devise, descent, alienation, mortgage or other encumbrance thereof; and it provides for sale, and for redemption after sale by the owner or encumbrancers. Under this provision the lien is superior to the complainant's mortgage. *Paterson* v. *O'Neill, 5 Stew. Eq. 386.*

When the complainant took his mortgage the charter gave to the municipal authorities a lien for the collection of the rents for the water which should be supplied by the city to the owners

26

or occupants of the property. He took his mortgage subject to the liability to that lien, and the methods prescribed by the legislature for enforcing it. While in *Jersey City* v. *Vreeland, 14 Vr. 638,* it was held that the assessments of water-rates on vacant lots and other property where the water is not used, are illegal, because the amount of tax imposed is determined by rates adopted by the board of public works in its discretion, without regard to special benefits or valuations, in the same case in the supreme court it was said that from the use of the water on the property, an obligation to pay the water-rent would result; that the act of the owner in taking the water would raise an implied promise on his part to pay the price fixed for such taking. *Vreeland* v. *Jersey City, 14 Vr. 135.* There is nothing before me to bring into question the legality of the assessment in this case on any ground except that of the unconstitutionality of the provisions which give the city a lien superior to the lien of the mortgage for the price of water supplied to the owner or occupant of the property, after the giving of the mortgage. By the provisions under consideration the legislature has given to the city the means of collecting, by lien upon the premises to which the water is supplied, superior to all encumbrances thereon, the price of the water supplied for use on the premises. The complainant, who took his mortgage after the provision went into operation, clearly has no right superior to that of the owner; and if the provision is valid against the latter, it is also against him. There does not appear to be any constitutional objection to the lien as against the owner. The legislature has power to give the city a lien upon his property for the collection of the price of water supplied to him for use there, and unless the manner of fixing the price is objectionable as subjecting him or his property to arbitrary assessments to which of necessity he must submit, whether just or unjust (which would be subversive of his rights of property), the regulation is not unconstitutional. Here the legislature has established a municipal board, with power to fix the price at which water is to be supplied to his property. He is under no legal necessity (and no actual one, so far as appears) to take the water, and if he chooses to take it

Jewell v. West Orange.

under the circumstances, he has no ground of complaint; no right of his is infringed. In taking the water from the city under the provision, he agrees to take it at the price fixed by the board. The mode of fixing it is not drawn in question here. There is no evidence on the subject, nor does it appear whether it is fixed before the water is supplied, or afterwards. The city's lien is paramount to that of the complainant's mortgage.